1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DANIEL RODRIGUEZ QUINTERO,

Petitioner,

v.

PATRICK COVELLO, Warden,

Respondent.[1]

Case No.:  22cv1625 RSH (MSB)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Daniel Rodriguez Quintero ("Petitioner"), a state prisoner proceeding pro se and in forma pauperis, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his judgment of conviction in San Diego County Superior Court. ECF No. 1. In the sole claim in the Petition, Petitioner contends the trial court violated and obstructed his Sixth Amendment right to self-representation when it denied Petitioner's request for

---

[1]    The Court notes that Patrick Covello serves as the Warden of Mule Creek State Prison, where Petitioner is currently incarcerated, *see* ECF No. 27 at 4; *see also* https://ciris.mt.cdcr.ca.gov/details?cdcrNumber=BN3161 (last visited Aug. 30, 2024), and is thus the proper Respondent to this federal habeas action. Accordingly, the Court **DIRECTS** the Clerk to reflect the substitution of Patrick Covello as Respondent on the docket.

advisory counsel to assist him in proceeding pro per. *Id.* at 4, 32-50, 81-97.[2] Respondent has filed a Response and also lodged portions of the state court record. ECF Nos. 12, 13, 22, 24. Petitioner has filed a Traverse.[3] ECF No. 18. For the reasons below, the Court denies the Petition and denies a Certificate of Appealability.

## I.   PROCEDURAL BACKGROUND

### A.   State Trial Court Proceedings

By an Indictment filed on October 16, 2018 in San Diego County Superior Court case number SCS303737, Petitioner was charged with the following: one count of murder in violation of Cal. Penal Code § 187(a), along with two special circumstance allegations, the first, that the murder was committed during the commission and attempted commission of kidnapping within the meaning of Cal. Penal Code § 190.2(a)(17) and the second, that the murder was intentional and involved the infliction of torture within the meaning of Cal. Penal Code § 190.2(a)(18) (count one); one count of kidnap for ransom, reward or extortion in violation of Cal. Penal Code § 209(a) with an additional allegation that the victim suffered bodily harm and death within the meaning of Cal. Penal Code § 209(a) (count two); and one count of torture in violation of Cal. Penal Code § 206 with the allegation that Petitioner inflicted great bodily injury within the meaning of Cal. Penal Code § 12022.7. ECF No. 13-1 at 9-10.

On June 29, 2020, after a jury trial, a San Diego County jury found Petitioner guilty of all three charged counts, found true both special circumstance allegations as to count one, and found true both the bodily harm allegation as to count two and the great bodily injury allegation as to count three. ECF No. 13-2 at 184-86. On September 16, 2020, the

---

[2]     All citations to electronic case filing ("ECF") entries refer to the ECF-generated page numbers.

[3]     Although this case was referred to United States Magistrate Judge Michael S. Berg pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for disposition of this matter. *See* S.D. Cal. Civ. LR 71.1(d).

trial court sentenced Petitioner to life in prison without the possibility of parole on counts one and two, life with the possibility of parole on count three, and stayed the sentences on the special circumstance allegations. *Id.* at 118.

## B. Appeal and Petition for Review

Petitioner appealed his judgment of conviction to the California Court of Appeal, challenging the trial court's denial of his request for advisory counsel (the sole claim presented in the instant Petition) and additionally requesting the removal of any unpaid portion of a recently vacated administrative fee from his judgment. ECF No. 13-9. On May 11, 2022, the California Court of Appeal modified the judgment to vacate any unpaid portion of the administrative fee and affirmed the judgment of conviction in all other respects. ECF No. 13-11. Petitioner thereafter filed a petition for review in the California Supreme Court again challenging the trial court's denial of his request for advisory counsel (the claim presented here), which on August 10, 2022, the California Supreme Court denied in a decision that stated: "The petition for review is denied." ECF Nos. 13-12; 13-13.

## C. Federal Habeas Petition

On October 17, 2022, Petitioner filed a federal habeas Petition in the Eastern District of California, which on October 19, 2022, was ordered to be transferred to this District. ECF Nos. 1, 4. On May 12, 2023, Respondent filed an Answer and lodged portions of the state court record. ECF Nos. 12, 13. On August 18, 2023, Petitioner filed a Traverse. ECF No. 18. On March 8, 2024, and March 12, 2024, in response to the assigned Magistrate Judge's Order requiring supplemental lodgments, Respondent lodged additional portions of the state court record [ECF Nos. 22, 24], and on July 19, 2024, the assigned Magistrate Judge ordered the Clerk to file under seal a *Marsden* hearing transcript provided by the California Court of Appeal [ECF Nos. 25, 26]. On August 9, 2024, the assigned Magistrate Judge granted in part Petitioner's request to file additional materials under seal, ordering additional *Marsden* hearing transcripts to be filed under seal. ECF Nos. 27-31.

///

///

## II.   STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Under 28 USCS § 2254(d), a federal habeas petitioner cannot obtain federal habeas relief on a claim that the state court adjudicated on the merits unless the petitioner is first able to show that the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 9798 (quoting 28 U.S.C. § 2254(d)(1)-(2)).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *Bruce v. Terhune*, 376 F.3d 950, 953 (9th Cir. 2004). With respect to section 2254(d), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (quoting 28 U.S.C. § 2254(e)(1)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664

(2004)). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter*, 562 U.S. at 102 (citation omitted).

Additionally, even in a situation where section 2254(d) is satisfied or does not apply, a reviewing habeas court must still determine whether the petitioner has established a federal constitutional violation. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007) (§ 2254(d) "sets forth a precondition to the grant of habeas relief . . . not an entitlement to it."); *see also Frantz v. Hazey*, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc). By statute, federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added).

In a federal habeas action, "[t]he petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). Even so, "[p]risoner pro se pleadings are given the benefit of liberal construction." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## III.   ANALYSIS

Petitioner raises a single ground in his Petition, Claim 1, contending the trial court violated and obstructed his Sixth Amendment right to self-representation when it denied his request for advisory counsel to assist him in proceeding pro per.[4]

---

[4]     While Petitioner advances this sole claim for federal habeas relief in the instant Petition, *see* ECF No. 1 at 4, he appears to advance numerous other contentions in the Traverse, including but not limited to alleging the prosecutor committed misconduct by

### A.    State Appellate Court Decision

Petitioner previously raised Claim 1 in a petition for review filed in the California Supreme Court, which that court denied without a statement of reasoning or citation to authority. *See* ECF Nos. 13-12, 13-13. Petitioner also previously presented Claim 1 to the California Court of Appeal on direct appeal, which that court denied in a reasoned opinion. *See* ECF Nos. 13-9, 13-11. The Court "looks through" the California Supreme Court's silent denial to the reasoned opinion issued by the California Court of Appeal as to this claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing.  We think that a presumption which gives them *no* effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play.") (footnote omitted).[5]

Here, the California Court of Appeal rejected Plaintiff's claim, reasoning as follows:

> Quintero asserts the trial court failed to exercise its discretion when it denied his request for advisory counsel, during a brief period in which he was representing himself in pro per.  He further contends the error

lying to the grand jury, suppressing exculpatory evidence, suborning perjury by a witness, and destroying and altering evidence; alleging his confession was given under duress, was coerced and was not admissible; and asserting insufficient evidence supports his conviction and that he is actually innocent. *See* ECF No. 18 at 2-3, ECF No. 18-13 at 6, 9-12. To the extent Petitioner now attempts to raise in the Traverse additional claims of federal constitutional error not previously presented in the Petition, the Court will not consider any such new claims for federal habeas relief. *See* ECF No. 10 at 3 ("Any traverse by Petitioner . . . must not raise new grounds for relief that were not asserted in the Petition. Grounds for relief withheld until the traverse will not be considered."); *see Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994) ("[A] ground for relief is not properly raised in a Traverse.")

[5]    The Supreme Court has repeatedly stated a presumption exists "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst*, 501 U.S. at 803 (1991); *see also Wilson v. Sellers*, 584 U.S. 122, 128 (2018) ("We conclude that federal habeas law employs a 'look through' presumption."). Plaintiff has not presented any argument nor are there any other grounds in the record to rebut this presumption.

requires reversal per se because it would have been an abuse of discretion to deny the request if the trial court had exercised its discretion. The Attorney General contends Quintero forfeited the argument by relinquishing his right to represent himself and accepting appointed counsel. We decline to resolve the issue based on forfeiture, but conclude the trial court did not fail to exercise its discretion and, even if it did, the error was not prejudicial.

A.    *Relevant Pre-Trial Proceedings*

Quintero was initially represented by the San Diego County Public Defender Office.  He asked to represent himself in February 2019, relatively early in the proceedings.  He explained to Judge Francis Devaney, then presiding, that he did not want his attorney to vigorously cross-examine certain witnesses because another individual had been executed shortly after the murder and he did not want to place anyone else in danger.  [footnote: At trial, a detective testified there was a fingerprint and palm print on an exterior door to the tattoo shop matched to an individual named Jose Z. The police were not able to connect Jose Z. to Jesus or the murder. Jose Z.'s mother told the police he was assassinated in Mexico shortly after Jesus's murder.]  However, he understood any appointed attorney would have an ethical obligation to put on a zealous defense.  The court granted Quintero's request for pro per status, and appointed [Office of Assigned Counsel ("OAC")] "to provide a legal runner and reasonable ancillary services."

At a readiness hearing on April 22, 2019, Quintero presented a discovery motion, but agreed to take it off calendar after Judge Devaney explained he first needed to use the informal discovery process. Quintero then said, "I want to file an injunction on OAC," and asserted OAC was not providing adequate assistance with the discovery process. Judge Devaney explained to Quintero that he would need to ask OAC to file a motion regarding his discovery issues and complaints about OAC, in the appropriate department.  The trial court and Quintero had the following exchange:

> "(Quintero): I do want to ask the (c)ourt for a court counsel that is not affiliated with OAC.
>
> "(Court): Well, you want me to reappoint the public defender?

"(Quintero): No. I have a conflict of interest with the public defender on my last hearing on the *Faretta* hearing. I made a crucial mistake saying that the person claiming responsibility got executed, but I was wrong. The person claiming responsibility is still out there. The other person known to the alleged victim is the one that got executed and my public defender did not know that after six months of having my case. And I think that she would have -- I told her a few weeks when I filed the *Faretta* and she didn't look up the paperwork.

"(Court): I don't need all that background in front of the public defenders. (¶) What exactly are you asking me to do?

"(Quintero): I need for the (c)ourt to assign me co-counsel that is not affiliated with OAC, because OAC makes me sign a contract waiving my rights, and I don't agree with the contract with OAC waiving my rights.

"(Court): Okay. Mr. Quintero, you are going to either represent yourself or I will appoint the public defender or the alternate public defender, but I'm not appointing co-counsel. You can either be your own attorney or you can be represented by an attorney. I'm not going to appoint co-counsel. (¶) So are you asking me to revoke your pro per status and appoint an attorney to represent you?

"(Quintero): I believe in the interest of justice it would be better to have a co-counsel so that this moves on faster. And if you say that I'm not having a co-counsel, I'll stay as pro per. But the time it's going to take me --

"(Court): I don't want to tell you what to do. We had this conversation. I told you what I think about someone in your shoes, with a murder charge, representing themselves. I already told you it's not a wise idea. But there is no such thing as co-counsel. It's either you're on your own in pro per or I assign you an attorney and you can assist that attorney. That attorney has obligations

towards you.  But there is no co-counsel.  So if you want to continue to represent yourself sitting next to an attorney, that is not going to happen.  It is either you're on your own or you're represented.  What is your choice?

"(Quintero): I'll stay on my own.

"(Court): All right."

OAC filed Quintero's motion and the trial court held another hearing on May 1, 2019.  Judge Michael T. Smyth was now presiding.  Quintero raised a number of specific concerns, which the court addressed.  The following exchange occurred at the conclusion of the hearing:

"(Quintero): May I ask a comment or a question?  You said that you were able to appoint a public defender again in this court?

"(Court): Right.

"(Quintero): Due to my limitations as a KSA [footnote: KSA means "keep separate all" and is a restricted housing status requiring certain inmates be kept separate from others.] inmate, is it possible so that I have full access with the board of lawyers to cross-examine for the court to assign me a co-counsel?  That way all the motions that establish my defense, I can send that straight to that co-counsel.

"(Court): We don't do co-counsel here.  I don't do that. We can have someone represent you, but *in this circumstance*, I would not be doing co-counsel or advisory counsel."  [footnote: The transcript for the hearing was sealed for Quintero's benefit because he raised issues relevant to his defense as a self-represented defendant. The quoted portion of the transcript does not reveal those defenses and Quintero included the same passage in his opening brief.  He has therefore waived any objection to our inclusion of the passage in this opinion.]   (Italics added.)

A few weeks later, on May 20, 2019, Quintero relinquished his pro per status and accepted appointed counsel.  He was represented by the public defender at trial.

### B.   *Forfeiture*

We begin our analysis with the Attorney General's assertion that Quintero forfeited his claim of error regarding the trial court's denial of his request for advisory counsel by subsequently accepting appointed counsel.  The Attorney General provides no authority, nor are we aware of any, establishing that a self-represented defendant waives or forfeits the claim of an erroneous denial of advisory counsel by subsequently relinquishing his self-represented status.

The Attorney General relies primarily on *People v. Stanley* (2006) 39 Cal.4th 913.  There, the defendant "orally interposed (a) request for self-representation during a renewed *Marsden* [footnote: *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).]  motion made in municipal court one year before his preliminary hearing and nearly two years before the start of trial, out of apparent annoyance or frustration with his first appointed counsel." (*Id.* at pp. 932-933.)  The defendant never renewed the request but subsequently accepted a substitution of appointed counsel, as well as the appointment of an additional attorney to assist the primary appointed counsel. (*Id.* at p. 933.)  The California Supreme Court concluded, "(i)n light of defendant's subsequent acceptance of several appointed counsel to represent him without ever renewing his request for self-representation," he abandoned his desire to be self-represented and therefore waived the issue on appeal.  (*Ibid.*)

We cannot reach the same conclusion regarding Quintero's request for advisory counsel in this case.  Quintero raised his request twice in less than two weeks and only accepted appointed counsel after the trial court denied both requests, leaving him with the choice of continuing to represent himself without assistance or accepting appointed counsel. The Attorney General asserts there is no evidence the trial court's denial of Quintero's request for advisory counsel had any bearing on Quintero's decision to accept appointed counsel.  To the contrary, Quintero began the second inquiry by confirming the trial court could still appoint a public defender, but indicated his preference was to represent himself with the assistance of "co-counsel."  We are not

convinced that Quintero's subsequent relinquishment of his pro per status, under these circumstances, constituted a forfeiture of the claim he now asserts.  So we will address the merits of Quintero's claim.

## C.    *Advisory Counsel*

Turning to the merits, we are not persuaded the trial court failed to exercise its discretion when it denied Quintero's requests for advisory counsel.

"'A defendant in a criminal case possesses two constitutional rights with respect to representation that are mutually exclusive.' (Citation.) '(T)he Sixth Amendment guarantees a defendant a right to counsel but also allows him to waive this right and to represent himself without counsel.'" (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 545.)  A defendant who chooses self-representation may request, but does not have a constitutional right to, advisory counsel.  (*People v. Doane* (1988) 200 Cal.App.3d 852, 861, disapproved on other grounds in *People v. Barnum* (2003) 29 Cal.4th.1210.)  "[T]he decision to appoint an advisory counsel lies within a trial court's discretion." (*Doane*, at p. 861.)  If the trial court does appoint advisory counsel, they typically serve a "narrow role . . . giving legal advice and assistance to a defendant who has the control and responsibility for his own defense." (*Id.* at p. 864; see also *People v. Bradford* (1997) 15 Cal.4th 1229, 1368 ("When a defendant chooses self-representation, he or she retains primary control over the conduct of the case, and consequently the role of advisory counsel is limited.").)

The California Supreme Court, in *People v. Crandell* (1998) 46 Cal.3d 833 (*Crandell*), explained that: "When a defendant requests appointment of advisory counsel, a court's failure to exercise its discretion is serious error and its denial of a request for advisory counsel in a capital case may constitute an abuse of discretion. ((*People v. Bigelow* (1984) 37 Cal.3d 731, 743 (*Bigelow*).)])  We held in *Bigelow* that failure to exercise discretion on a request for advisory counsel *in circumstances where a refusal to grant the request would be an abuse of discretion* requires automatic reversal of a resulting conviction because of the inherent difficulty in assessing prejudice." (*Crandell*, at p. 861, citing *Bigelow*, at pp. 744-746, italics in original.) However, as the Court further explained, "*Bigelow*, *supra*, 37 Cal.3d 731, did not establish a 'fixed rule' that advisory counsel must be appointed for

every pro se defendant in a capital case, and thus the question whether denial of a request for advisory counsel would have been an abuse of discretion must be determined on a case-by-case basis." (*Crandell*, at p. 863.)

Where the trial court fails to acknowledge or exercise its discretion in refusing to appoint advisory counsel, but the denial would *not* have been an abuse of discretion if the court *had* exercised its discretion, prejudice is assessed under the harmless error standard articulated in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Crandell*, *supra*, 46 Cal.3d at pp. 864-865.) Under the *Watson* standard, the error is prejudicial and requires reversal if it is reasonably probable the result would have been more favorable to the defendant had the error not occurred. (*Watson*, at p. 836.)

Here, Quintero asserts the trial court failed to exercise its discretion because it did not engage "in a reasoned exercise of judgment based on an examination of the particular circumstances of this case," and instead, issued a blanket ruling. (See *Crandell*, *supra*, 46 Cal.3d at p. 862.) We begin with the presumption the trial court both understood and appropriately exercised its discretion. (See *People v. De Jesus* (1995) 38 Cal.App.4th 1, 29.) The trial court need not affirmatively acknowledge its discretion. (*Ibid.*) Rather, Quintero, as the appellant, has the burden of demonstrating "the trial court failed to perceive its power." (*Ibid.*) We acknowledge the trial court made broad statements about its willingness to appoint advisory counsel in each instance. And those statements might be taken as blanket rulings, if read in isolation. However, when read in context, we conclude the trial court did understand that it had the discretion to appoint advisory counsel, and that it did consider the specific circumstances of the case before denying Quintero's request.

When Quintero first asked the trial court to assign "co-counsel" not associated with OAC, Judge Devaney responded, in part, "I'm not going to appoint co-counsel." Quintero persisted and the court stated, in part, "there is no co-counsel." Although the later statement appears conclusory in nature, in full context, we perceive it as the trial court's attempt to explain to a self-represented defendant, in simple straightforward language, that co-counsel was not an option *in this case.* Quintero then renewed his request at a subsequent hearing in a different department, with a different judge. Like the first request, the

second was in the context of complaints about OAC and, specifically, OAC's efficiency in responding to Quintero's administrative requests. Judge Smyth initially told Quintero, "We don't do co-counsel here," but then clarified, "*in this circumstance*, I would not be doing co-counsel or advisory counsel." (Italics added.)

This is not a case, as Quintero urges, like *Crandell* or *Bigelow*, in which the trial court expressly stated, "'there is no such thing' as advisory counsel (*Crandell*, *supra*, 46 Cal.3d at p. 857) or that advisory counsel is "'not permitted under California law'" (*Bigelow*, *supra*, 37 Cal.3d at p. 740), without any further clarification. Instead, this case is more like *People v. Choi* (2021) 59 Cal.App.5th 753 (*Choi*). In *Choi*, the trial court responded to a request for advisory counsel by stating, "That's not the way it's done in this courthouse." (*Ibid.*) However, the trial court also acknowledged it did have the authority to appoint advisory counsel, and explained the defendant made a choice to represent himself and "was 'smarter than most.'" (*Id.* at pp. 767-768.) Viewing the trial court's comments in context, the appellate court was "satisfied the (trial) court did not apply a blanket practice of denying advisory counsel without exercising its discretion under the circumstances." (*Id.* at p. 769.) Similarly considering the trial court's comments in context here, we cannot conclude the trial court failed to recognize or exercise its discretion.

Even if we were to conclude the trial court did fail to exercise its discretion, which we do not, reversal would not be warranted. As we explain, the record before us "does not demonstrate that denial of (Quintero's) request for advisory counsel would have been an abuse of discretion." (*Crandell*, *supra*, 46 Cal.3d at p. 864.) Thus, "*Bigelow* is distinguishable and its rule of per se reversal does not govern." (*Ibid.*) We instead apply the *Watson* harmless error standard and conclude it is not reasonably probable the result would have been more favorable to Quintero in the absence of the purported error. (*Crandell*, at pp. 864-865; *Watson*, *supra*, 46 Cal.2d at p. 836.)

"The factors which a court may consider in exercising its discretion on a motion for advisory counsel include the defendant's demonstrated legal abilities and the reasons for seeking appointment of advisory counsel." (*Crandell*, *supra*, 46 Cal.3d at p. 863 (concluding trial court does not abuse its discretion by denying a request for advisory counsel that is essentially a manipulative end run around the denial of a

22cv1625 RSH (MSB)

*Marsden* motion).)   The court may also consider the defendant's general education level, the seriousness of the charges, and the overall complexity of the case. (*Bigelow*, 37 Cal.3d at pp. 743-744.)

As an initial matter, we note this case presents a unique set of circumstances.  First, as the trial court acknowledged, this was not a typical case in which Quintero believed he could do a better job than the public defender.  Rather, Quintero's stated reason for wanting to represent himself was he did not want his attorney to "adequately, diligently represent" him at trial.  As Quintero explained to the trial court, he did not want his appointed attorney to vigorously cross-examine certain witnesses.

Second, the scope of Quintero's request for advisory counsel was limited.  After raising complaints about OAC, Quintero asked for "co-counsel that is not affiliated with OAC, because . . . (he did not) agree with the contract with OAC waiving (his) rights."  Quintero renewed his request at the next hearing after raising complaints about the efficiency of OAC, and said he wanted "co-counsel" so he could send "all the motions that establish my defense . . . straight to that co-counsel."  Quintero did not, at any point, indicate he needed legal assistance to prepare those motions, or any other part of his defense.

Third, Quintero's requests appear to have been motivated primarily by his stated concerns with the public defender and OAC.  Quintero first asked for "counsel that is not affiliated with OAC."  When the trial court inquired whether Quintero wanted it to reappoint the public defender, Quintero declined, citing the alleged conflict of interest, and stated he wanted "co-counsel that is not affiliated with OAC."  Thus, the record suggests Quintero was actually seeking substitute counsel for OAC, or, put another way, assistance from an appointed counsel that was not the public defender or OAC.  [footnote: Notably, the trial court did hold several *Marsden* hearings and did specifically address the public defender's alleged conflict of interest, but Quintero does not assert the trial court erred in any of its rulings at those proceedings.]  As the Court in *Crandell* explained, it is appropriate for a trial court to deny a request for advisory counsel where there is "evidence (of) a manipulative endeavor to obtain the appointment of private counsel without a showing of conflict or inadequacy sufficient to remove the public defender in the first instance." (*Crandell*, *supra*, 46 Cal.3d at p. 863.)

Quintero relies on *People v. Mattson* (1959) 51 Cal.2d 777 to assert the denial of his request was error because advisory counsel would have promoted justice and allowed the matter to proceed in an "orderly and expeditious" manner.  (*Id.* at p. 797.)  In *Mattson*, the California Supreme Court confirmed matters related to the appointment of advisory counsel "are within the sound discretion of the trial judge, who is in a position to appraise the courtroom situation and determine what procedure will best promote orderly, prompt and just disposition of the cause."  (*Ibid.*)  The Court continued, "(t)he (trial) court, however, should *not* permit a litigant both to have counsel and to actively participate in the conduct of the case (as by conducting examination of witnesses, interposing objections, arguing points of law or of fact, addressing the jury, etc.) *unless* the court on a substantial showing determines that in the circumstances of the case the cause of justice will thereby be served and that the orderly and expeditious conduct of the court's business will not thereby be substantially hindered, hampered or delayed."  (*Ibid.*, italics added.)  The Court did not hold, as Quintero suggests, the trial court must appoint advisory counsel any time doing so would promote justice or efficiency.  Regardless, Quintero did not argue he needed advisory counsel for the presentation of his case at trial, nor did he make the type of showing described in *Mattson*.

Moreover, Quintero was educated and capable of self-representation. He was competent, could read and write in English, and had completed approximately 120 college credits.  During the *Faretta* hearing, the trial court observed: "Having talked to Mr. Quintero, I think he's much brighter and well(-)spoken than most defendants who ask to go pro per, so I don't think there's going to be a competency issue."  Quintero argues he did not have any legal knowledge or experience but, of course, the vast majority of self-represented litigants do not.  The record demonstrates Quintero was capable of understanding the proper mechanism for bringing a discovery motion once the trial court explained the discovery process.  Although the trial court indicated some of the claims included in the motion were civil matters, and were not appropriate for a criminal case, Quintero was able to obtain at least some relief with respect to other, properly raised issues.  And again, Quintero never directly indicated he needed assistance with understanding the law or legal processes; he simply raised concerns with the efficiency of OAC's *administrative* services.

Quintero further asserts the charges against him were serious and the case was both legally and factually complex.  We acknowledge the charges were serious, and there is at least some suggestion in the record the Attorney General was still considering the death penalty when the trial court refused to appoint advisory counsel.  However, the case ultimately was not a capital case and did not involve the type of difficult statutory construction or constitutional issues present in *Bigelow*.  (See *Bigelow*, *supra*, 37 Cal.3d at p. 743 ("The case arose under the 1978 death penalty initiative, an enactment rife with constructional and constitutional difficulties, which had not yet been judicially interpreted.").)  Quintero argues the different charges here required different mental states but does not assert, or present any evidence in the record indicating, he had difficulty understanding or applying the relevant legal principles.

In *Crandell*, our high court distinguished the holding in *Bigelow* and found the *Watson* standard of prejudice applicable, where "the defendant was charged only with the multiple-murder special circumstances, which presented no significant construction problems," and "demonstrated substantial competence."  (*Crandell*, *supra*, 46 Cal.3d at p. 864.)  Likewise, here, the charges did not raise any novel constitutional issues, Quintero's request for assistance was limited, and Quintero was substantially competent.  Thus, the denial of Quintero's request would not have been an abuse of the trial court's discretion, had the trial court exercised that discretion.

Applying the *Watson* standard, it is not "reasonably probable that different verdicts would have been returned had (Quintero) received the assistance of advisory counsel."  (*Crandell*, *supra*, 46 Cal.3d at p. 866.)  Importantly, unlike the defendants in *Bigelow* and *Crandell*, Quintero was ultimately represented by competent, appointed counsel at trial and the jury still convicted him on all asserted charges.  Quintero's reason for initially rejecting appointed counsel was he wanted to present a *less* zealous defense. Given Quintero's explanation, it is difficult to conceive of a scenario in which he would have received a better outcome at trial if he had remained self-represented, even with the assistance of advisory counsel.

In sum, we conclude the trial court did not fail to exercise its discretion when it denied either of Quintero's requests for advisory counsel, but

22cv1625 RSH (MSB)

1
2

> even if it did, the error was not prejudicial and does not warrant
> reversal.

3   ECF No. 13-11 at 10-22.

4          In his federal habeas petition, Petitioner again contends that the trial court violated
5   and obstructed his Sixth Amendment right to self-representation when it denied his request
6   for advisory counsel to assist him in proceeding pro per. ECF No. 1 at 4, 32-50, 81-97.
7   Specifically, he asserts that he "was obstructed by the court to represent myself by denying
8   co-counsel in a death penalty case." *Id.* at 4. As a result of the trial court's denial, which
9   led to Petitioner ultimately relinquishing his right to proceed pro per and accepting the
10  appointment of the public defender as counsel, Petitioner asserts the public defender
11  thereafter denied him his right to review evidence, his right to investigation, to interview
12  witnesses, and to select the defense theory, noting as to the latter contention that he wanted
13  a different defense theory than the "voluntary intoxication" defense counsel pursued but
14  was denied this choice because of the trial court's earlier actions denying him the assistance
15  of co-counsel. *Id.* Respondent maintains that federal habeas relief is unavailable given the
16  sole claim does not present a federal question because there is no Sixth Amendment right
17  to advisory counsel, which necessarily means the state court's rejection of Claim 1 is
18  neither contrary to, nor an unreasonable application of, clearly established federal law. ECF
19  No. 12-1 at 12-13 (citations omitted).

20         **B.     Violations of State Law on Federal Habeas Review**

21         As an initial matter, to the extent Petitioner contends *state* law error in denying his
22  request for assistance in a potential capital case violated his *federal* constitutional rights,
23  any such error under state law in denying his request for advisory counsel is not cognizable
24  on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not
25  the province of a federal habeas court to reexamine state-court determinations on state-law
26  questions. In conducting habeas review, a federal court is limited to deciding whether a
27  conviction violated the Constitution, laws, or treaties of the United States."); *see also*
28  *Rhoades v. Henry*, 611 F.3d 1133, 1142 (9th Cir. 2010) ("[V]iolations of state law are not

cognizable on federal habeas review."). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), citing *McGuire*, 502 U.S. at 67-68; *see also Mullaney v. Wilbur*, 421 U.S. 684, 691 and n.11 (1975) (recognizing that "state courts are the ultimate expositors of state law" and federal courts "are bound by their constructions except" in a situation where such construction "appears to be an obvious subterfuge to evade consideration of a federal issue.") (internal quotation marks omitted). A habeas petitioner cannot sidestep this rule by asserting the state court's allegedly erroneous decision under state law resulted in a federal constitutional violation. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("Langford may not, however, transform a state-law issue into a federal one merely by asserting a violation of due process. We accept a state court's interpretation of state law, and alleged errors in the application of state law are not cognizable in federal habeas corpus.") (internal and external citations omitted).

Here, Petitioner clearly contends that his request for the assistance of co-counsel as a pro per defendant in what was then a potentially capital case was based on state law, specifically Cal. Penal Code §§ 987(d) and 1095, in that he "relied on law that gave him the right for co-counsel in capital cases in the CA.P.C. 987(d), and 1095," and that he "was forced" to waive that right "by the violation of the court['s] discretion to provide co-counsel in [a] capital case." ECF No. 18-13 at 8. The California Court of Appeal, in turn, analyzed this question under state law, reasoning that that there was no "fixed rule" under state law requiring such assistance in a potential capital case, contrary to Petitioner's contention, and the question was instead amenable to an abuse of discretion analysis. *See* ECF No. 13-11 at 16 (citing to and applying *People v. Crandell*, 46 Cal. 3d 833 (1998) and *People v. Bigelow*, 37 Cal. 3d 731 (1984)). The California Court of Appeal found that the trial court did not categorically reject Petitioner's request, nor did the trial court improperly indicate that advisory counsel was not permitted under state law, but instead made it clear that such assistance would not be an option in *Petitioner's* case. *See* ECF No. 13-11 at 17

(state appellate court found language employed in rejection of Petitioner's request to be "the trial court's attempt to explain to a self-represented defendant, in simple straightforward language, that co-counsel was not an option *in this case*."); *see also id.* at 18 ("[C]onsidering the trial court's comments in context here, we cannot conclude the trial court failed to recognize or exercise its discretion.") The state appellate court also found that "[e]ven if we were to conclude the trial court did fail to exercise its discretion, which we do not, reversal would not be warranted," as the state law harmless error standard applied to the instant situation. *See id.* at 18.

It is not the province of this Court to re-evaluate the correctness of the state appellate court's determination that the trial court recognized and exercised its discretion in denying Petitioner's request, and that even if it did not, any such error in applying state law was governed by a state law harmlessness analysis and was in any event harmless. *See McGuire*, 502 U.S. at 67-68; *Rhodes*, 611 F.3d at 1142. The Court is instead bound by the state appellate court's interpretation and application of state law. *Richey*, 546 U.S. at 76, citing *McGuire*, 502 U.S. at 67-68; *Mullaney*, 421 U.S. at 691.

## C.     Federal Right to Advisory Counsel

Even were Petitioner somehow able to show his claim is cognizable on federal habeas review, he does not in any event establish the existence of a federal constitutional violation stemming from the trial court's denial of his request for advisory counsel. This is because while there is a well-recognized federal constitutional right to self-representation, there is no clearly established federal constitutional right to the assistance of standby or advisory counsel for a defendant proceeding pro per.

"The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807 (1975). Moreover, a criminal defendant has the right to represent himself, as "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."

*Id.* at 819; *see also id.* at 832 ("The Framers selected in the Sixth Amendment a form of words that necessarily implies the right of self-representation.")

In *Faretta*, the United States Supreme Court additionally indicated that "[o]f course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* at 834, n. 46 (citation omitted). However, the Supreme Court later clarified that use of such "standby" counsel to assist a self-represented defendant was not constitutionally required. *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) ("*Faretta* does not require a trial judge to permit "hybrid" representation of the type Wiggins was actually allowed.") The Ninth Circuit has similarly held that "hybrid" representation, specifically including "advisory" counsel, is merely discretionary rather than required by the federal constitution. *See Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983) ("If the right to co-counsel is not of constitutional dimension, we fail to see why the right to advisory counsel should be afforded higher status. The decision to allow a defendant to proceed with either form of hybrid representation is best left to the sound discretion of the trial judge.") (citing *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) (per curiam) and *United States v. Coupez*, 603 F.2d 1347, 1351 (9th Cir. 1979) (internal citation omitted)). The Ninth Circuit has also since reiterated that both it and the Supreme Court have found a lack of any federal constitutional right to the assistance of such counsel when a defendant is proceeding pro per. *See United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994) (noting that "[a] defendant does not have a constitutional right to "hybrid" representation," and that the Ninth Circuit has also "so held."), citing *McKaskle*, 465 U.S. at 183 and *Locks*, 703 F.3d at 407-08.

In this case, in February 2019, at a rather early point in the pre-trial proceedings (again, trial took place in June 2020), Petitioner expressed dissatisfaction and disagreement with the tactical choices his appointed defense counsel was pursuing and sought to represent himself. *See* ECF No. 13-4 at 3-4; *see also* ECF No. 13-7 at 3-12. After first

holding a brief *Marsden* hearing,[6] the trial court thereafter heard Petitioner's request to represent himself. ECF No. 13-4 at 12. The trial court informed Petitioner about his right to counsel and advised against self-representation, specifically noting that the instant case involved charges of first-degree special circumstance murder which could lead to either the death penalty or life in prison without parole. *Id.* at 14-15. The trial court also advised Petitioner it could not assist him simply because he was choosing to represent himself and that he would need to handle on his own each of the various aspects of the pre-trial and trial proceedings, including motions to suppress evidence, motions in limine, jury voir dire, opening statements, direct and cross-examination, introducing evidence, and closing arguments. *Id.* at 16-20. The trial court also advised Petitioner that there was no ability to claim ineffective assistance of counsel on appeal if he represented himself, and that while it would provide Petitioner with a "runner" to assist him, he would not be provided with an investigator and would have limited library privileges. *Id.* at 20-22.

After a thorough advisement, the trial court found that Petitioner was "competent and able to do it," noted: "I'm confident that you have made an informed decision," and stated it would allow Petitioner to proceed pro per and found that Petitioner "made a knowing, voluntary and intelligent waiver of your right to counsel." *Id.* at 26. The trial court indicated it would notify the OAC to assist Petitioner with providing him a runner, again reiterating that the OAC would not provide investigative assistance. *Id.* at 26-27. The state record reflects that in February 2019, Petitioner also completed, initialed, and signed a form entitled "Acknowledgment Regarding Self-Representation and Waiver of Right to Counsel (*Faretta*/*Lopez* waiver)." ECF No. 13-3 at 5-7. That form included a line, which

---

[6] The Court has reviewed the contents of this *Marsden* hearing transcript, which was lodged with the Court under seal, *see* ECF Nos. 25-26, and is satisfied it has no bearing on the matters at issue in the instant Petition. The Court has also reviewed the additional submitted *Marsden* hearing transcripts, *see* ECF Nos. 27-31, and is similarly satisfied none of these materials has any bearing on the matters at issue in the instant Petition.

Petitioner initialed as indicating he understood, stating: "I understand that I do not have a right to advisory, standby or co-counsel." *Id.* at 7.

As the state appellate court similarly recounted, *see* ECF No. 13-11 at 11-12, at an April 2019 hearing Petitioner asked for an "injunction" or motion directed against OAC for failing to assist him as required, and was informed that he would have to file those motions to be heard in another department. ECF No. 13-5 at 5-8. Petitioner thereafter stated: "I do want to ask the Court for a court counsel that is not affiliated with OAC." *Id.* at 9. When the court asked if Petitioner wanted the public defender reappointed, Petitioner said no and repeated his request for "co-counsel that is not affiliated with OAC." *Id.* To that, the trial court replied that "you are going to either represent yourself or I will appoint the public defender or alternate public defender, but I'm not appointing co-counsel. You can either be your own attorney or you can be represented by an attorney. I'm not going to appoint co-counsel." *Id.* at 10. The court then inquired whether Petitioner was asking to revoke his pro per status and wished to have counsel appointed, to which Petitioner stated: "I believe in the interest of justice it would be better to have a co-counsel so that this moves on faster. And if you say that I'm not having a co-counsel, I'll stay as pro per." *Id.* After the trial court informed Petitioner "there is no such thing as co-counsel" and told Petitioner his choices were "either you're on your own in pro per or I assign you an attorney and you can assist that attorney," Petitioner stated: "I'll stay on my own." *Id.*

At a subsequent hearing several weeks later in May 2019, Petitioner moved to relinquish his pro per status but stated he did not want the public defender. ECF No. 13-6 at 3. Petitioner expressed concerns that their strategy would conflict with his own. *Id.* at 4. Petitioner indicated he had other motions, and the trial court indicated Petitioner could either (1) proceed pro per with his other motions or (2) take the public defender as appointed counsel and have them decide which motions to pursue. *Id.* at 4-6. Given the choice, Petitioner said: "I will take the public defender and proceed on," and the trial court reappointed the public defender as counsel. *Id.* at 6. Petitioner was represented at trial by the public defender. *Id.* at 6.

Thus, at the time Petitioner chose to proceed pro per, it was made abundantly clear to him both through verbal advisements and in writing that he would not be provided with assistance other than a runner; he was also specifically advised in writing that he "d[id] not have a right to advisory, standby or co-counsel." ECF No. 13-3 at 7. Moreover, the trial court acted consistently with those earlier advisements when presented with Petitioner's later request for co-counsel, stating it would not appoint counsel to assist him in proceeding pro per and reiterating that Petitioner's choices were either to represent himself or to accept the re-appointment of counsel.

Based on its analysis of Claim 1, the California Court of Appeal concluded that "the trial court did not fail to exercise its discretion when it denied either of Quintero's requests for advisory counsel, but even if it did, the error was not prejudicial and does not warrant reversal." ECF No. 13-11 at 22. Because there is a lack of any clearly established authority concluding that the failure to provide a pro per defendant with the assistance of advisory or standby counsel offends federal constitutional guarantees, and because both the Supreme Court and Ninth Circuit have each instead clearly held that such "hybrid" representation is not constitutionally required, the Court concludes that the state court's rejection of Claim 1 was neither contrary to, or an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d)(1). *See McKaskle*, 465 U.S. at 183; *Locks*, 703 F.2d at 408; *Kienenberger*, 13 F.3d at 1356; *see also Hooper v. Shinn*, 985 F.3d 594, 614-15 (9th Cir. 2021) ("'If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.'") (quoting *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004)). Nor has Petitioner shown that the state court decision was based on an unreasonable determination of the facts. *See Schriro*, 550 U.S. at 475; *Rice*, 546 U.S. at 338-39.

Finally, even were Petitioner somehow able to satisfy section 2254(d), federal habeas relief remains unavailable because he fails to, and it appears he cannot, show the existence of a federal constitutional violation. *See Wilson v. Corcoran*, 562 U.S. 1, 6

(2010) (the AEDPA "does not repeal the command of § 2254(a) that habeas relief may be afforded to a state prisoner 'only on the ground' that his custody violates federal law."). As discussed above, here, both the Supreme Court and Ninth Circuit have held hybrid representation is *not* constitutionally required. *See McKaskle*, 465 U.S. at 183; *Locks*, 703 F.2d at 408; *Kienenberger*, 13 F.3d at 1356; *see also Greenholtz*, 442 U.S. at 7; *Fry*, 551 U.S. at 119 (section 2254(d) "sets forth a precondition to the grant of habeas relief . . . . not an entitlement to it.").

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner may not appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" except where "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C.A. foll. § 2254. "A certificate of appealability should issue if 'reasonable jurists could debate whether' (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is 'adequate to deserve encouragement to proceed further.'" *Shoemaker v. Taylor*, 730 F.3d 778, 790 (9th Cir. 2013) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In the instant case, the Court concludes that issuing a certificate of appealability is not appropriate. Reasonable jurists would not find debatable or incorrect the Court's conclusion that: (1) any error under state law in denying Petitioner's request for advisory counsel did not state a claim cognizable on federal habeas review; and (2) even to the extent Claim 1 is cognizable, the state court decision was not contrary to or an unreasonable application of clearly established law, Petitioner failed to demonstrate it was based on an unreasonable factual determination, and in any event, Petitioner failed to show the existence of a federal constitutional violation. *See* 28 U.S.C. § 2253(c); *Shoemaker*, 730 F.3d at 790 (quoting *Slack*, 529 U.S. at 484). Nor does the Court find any of the issues

presented adequate to deserve encouragement to proceed further. *Shoemaker*, 730 F.3d at 790 (quoting *Slack*, 529 U.S. at 484).

## V.   CONCLUSION

For the reasons discussed, the Court **DENIES** the Petition for a Writ of Habeas Corpus and **DENIES** a Certificate of Appealability. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

Dated: September 17, 2024

_____

Hon. Robert S. Huie
United States District Judge